**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM L. NIBLE,<br><br>               Plaintiff,<br><br>v.<br><br>FINK et al.,<br><br>             Defendants. | Case No.: 3:16-cv-02849-BAS-RBM<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. 56.]** |

## I. INTRODUCTION

Plaintiff William L. Nible ("Plaintiff"), a California prisoner proceeding *in pro per* and *in forma pauperis*, has filed a lawsuit pursuant to 42 U.S.C. § 1983 against several staff members of the Richard J. Donovan Correctional Facility in San Diego, California ("RJD"). (Doc. 46.) Plaintiff alleges that Defendants T. Fink ("Fink"), T. Diaz ("Diaz"), and G. Stratton ("Stratton") have committed violations of the First Amendment, the Eighth Amendment, the Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and California state law. (*Id.*) Each of these claims stems from an incident wherein Defendants confiscated Plaintiff's package containing a set of religious runes. (*Id.*) Defendants Fink and Diaz (collectively, "Moving Defendants") have filed a motion for summary judgment on the grounds that Plaintiff cannot carry his burden of

proof at trial as to any cause of action, and that Moving Defendants are entitled to qualified immunity. (Doc. 56.) Plaintiff has filed an Opposition arguing that Moving Defendants are not entitled to summary judgment as to any of his claims. Moving Defendants have not filed a Reply.

The matter was referred to the undersigned Judge for Report and Recommendation Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the pleadings, moving and opposition papers, and the evidence submitted in support thereof, this Court respectfully recommends the motion be **GRANTED**.

## II. ALLEGATIONS

Plaintiff alleges that on July 13, 2015, while incarcerated at RJD, he received a package from approved vendor AzureGreen containing a set of religious runes. (Doc. 46, at 5.) When Plaintiff appeared at Central Receiving and Release to accept the package, Fink opened the package, inspected the contents, and refused to release them to Plaintiff. (*Id.*) Fink's rationale for denying Plaintiff the 25-piece rune set was that "they are made of stone," and Fink would only allow Plaintiff five stones, per the prison's "religious property matrix." (*Id.*) Plaintiff disputed Fink's assessment and argued that the religious property matrix allowed runes which were made of natural material, such as stone. (*Id.*) Fink retorted: "I do not care, you are not getting those runes." (*Id.*)

On July 30, 2015, Plaintiff filed a grievance concerning the confiscation of the rune set. (*Id.*) The grievance was rejected for a failure to attach supporting documentation, despite Plaintiff's allegation that supporting documentation was provided. Sometime after this interaction, the rune set was sent back to AzureGreen, but the returned package did not contain all 25 pieces of the rune set. (*Id.,* at 6.) On September 14, 2015, Plaintiff submitted a CDCR-22 grievance form about the incident. (*Id.*) Diaz responded that Plaintiff's order was returned to the vendor. (*Id.*) On September 27, 2015, Plaintiff resubmitted the CDCR-22 form, along with a statement from AzureGreen that the complete set had not been returned. (*Id.*) Diaz responded: "The Runes you [Plaintiff] ordered were not approved due to size and quantity restrictions. It is not our [Receiving and Release's] fault the vendor

will not issue a credit for a [sic] opened order. R&R has to open the package when attempting to issue and verify items approved. You must order approved items in approved sizes and quantities." (*Id.*) Plaintiff resubmitted his grievance: again, it was rejected because Plaintiff failed to attach a CDCR-22 form, although Plaintiff alleges that the form was, in fact, attached. (*Id.*)

Plaintiff alleges that he obtained a letter from AzureGreen stating that runes are one inch or less, and claims that all the runes in the confiscated set were between one-half and three-quarters of an inch in each dimension. (*Id.*, at 6-7.) Plaintiff resubmitted his grievance once again, attaching "proof from the vendor that the Runes were within the size restrictions." (*Id.*, at 7.) The grievance was ultimately rejected. (*Id.*)

Plaintiff alleges that a member of his family has ordered runes for Plaintiff before and after the confiscation incident and has never encountered any difficulty. (*Id.*) Plaintiff's family member filed a citizen's complaint with the California Department of Corrections and Rehabilitation and received a response from Stratton. (*Id.*) The response stated that the rune set was confiscated because rune symbols were "identified as being associated with a security threat group," a conclusion that was reached after an interview with Fink—although Fink had initially stated that the runes were confiscated due to size restrictions. (*Id.*)

In his Second Amended Complaint, Plaintiff alleges several causes of action stemming from the confiscation. Plaintiff claims that Fink and Diaz[1] violated his First Amendment right to the free exercise of religion, his Eighth Amendment protection against cruel and unusual punishment, his Fourteenth Amendment right to equal protection, his Fourteenth Amendment right to due process, Title 15 of the California Code of Regulations, and the Religious Land Use and Institutionalized Persons Act. (*Id.*)

---

[1] The Complaint also alleges causes of action against G. Stratton. When the Motion for Summary Judgment was filed, Stratton had not yet been served with process, and therefore could not join in the motion. Stratton has since been served with process, and has filed a separate Motion to Dismiss. Accordingly, the Court will not discuss Stratton's liability here.

### III. STANDARD ON SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for the granting of a directed verdict. Judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "If reasonable minds could differ," however, summary judgment should not be entered in favor of the moving party. *Id.,* at 250-51.

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including the plaintiff's burden to establish any element essential to his case. *Id.,* at 252. The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. *S.E.C. v. Seabord Corp.,* 677 F.2d 1301, 1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd.v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 317. Additionally, Rule 56(e) does not require that the moving party's motion always be supported by affidavits to show initially the absence of a genuine issue for trial. *Celotex,* 477 U.S. at 317. In fact, the party moving for summary judgment does not need "to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof." *Id.,* at 325. Rather, "the

3:16-cv-02849-BAS-RBM

burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case. *Id.* However, it is not enough to simply state that the nonmoving party cannot meet its burden at trial; the moving party must point to materials on file, gathered using the tools of discovery, which demonstrate that a party will not be able to meet its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Companies, Inc.,* 210 F.3d 1099, 1105-1106 (9th Cir. 2000).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. To rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dis. No. 14J,* 208 F.3d 736, 738 (9th Cir. 2000).

While the district court is "not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pacific N.W. Bell. Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988), the court may nevertheless exercise its discretion "in appropriate circumstances," to consider materials in the record which are on file but not "specifically referred to." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001). However, the court need not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.*

In ruling on a motion for summary judgment, the court need not accept legal conclusions "in the form of factual allegations." *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). "No valid interest is served by withholding summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989). Moreover, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House,*

*Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). While "the district court may not disregard a piece of evidence at the summary judgment state solely based on its self-serving nature," *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-498 (9th Cir. 2015) (finding plaintiff's "uncorroborated and self-serving" declaration sufficient to establish a genuine issue of material fact because the "testimony was based on personal knowledge, legally relevant, and internally consistent"), "[t]he district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence. *Id.*, at 497 (citations omitted). "[T]he court must consider whether the evidence presented in the affidavits is of sufficient caliber and quantity to support a jury verdict for the nonmovant. A 'scintilla of evidence' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (citations omitted.)

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "We have repeatedly held that unauthorized documents cannot be considered in a motion for summary judgment." *Id.* "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-419 (9th Cir. 2001). *See also Fraser v. Goodale,* 342 F.3d 1042, 1046 (9th Cir. 2003) (holding "[a]t the summary judgment stage, the court must focus on the admissibility of the evidence's content, rather than its form).

## IV. EVIDENCE PRESENTED

### A. Moving Defendants' Proffer

Moving Defendants proffer the Declaration of Fink and the Religious Personal Property Matrix that controlled which items could be possessed by inmates. (Fink Decl., ¶ 4, Ex. 1.) Fink declares that since 2001 he has been a correctional officer employed by the California Department of Corrections and Rehabilitation and has been assigned to RJD

for the past twelve years. (Fink Decl., ¶ 2.) On July 13, 2015, Fink was a Receiving and Release Officer, assigned to receive, inspect, and process incoming inmate packages at RJD, under the direct supervision of Diaz. (Fink Decl., ¶ 3.) On that day, Plaintiff was in the Receiving and Release Department because he had received a package from an outside vendor. (Fink Decl., ¶ 4.) In accordance with his duties, Fink opened and inspected the package in front of Plaintiff and identified the contents of the package as religious stones. (Fink Decl., ¶ 4.) Based on his inspection, Fink believed that Plaintiff was not permitted to possess the contents of the package because their size and material violated the Religious Personal Property Matrix (the "Matrix") that controlled which items could be possessed by inmates. (Fink Decl., ¶ 4.) Fink explained the discrepancy to Plaintiff, showed him a copy of the Matrix, and checked with Diaz, who confirmed that the items were not permitted. (Fink Decl., ¶ 5.) Fink told Plaintiff that the package would be returned to the vendor, and that he could reorder stones that complied with the Matrix. (Fink Decl., ¶ 5.) The package was mailed back to the vendor. (Fink Decl., ¶ 5.) Generally, Plaintiff had the right to possess, and was permitted to possess, rune tiles or religious stones that complied with the Matrix; however, this specific package contained items that ostensibly were not in compliance and was therefore rejected. (Fink Decl., ¶ 6.) Fink was later contacted by RJD Community Resource Manager, R. Brown ("R. Brown"), about the issue: Fink advised R. Brown that the package was rejected because it did not comply with the Matrix, and agreed that if another package of religious runes or stones was sent to Plaintiff, Fink would have a supervisor or R. Brown assist in identifying and assessing the items. (Fink Decl., ¶ 7.)

Moving Defendants also submit the Matrix as an exhibit to Fink's Declaration. (Fink Decl., Ex. 1.) The first page of the Matrix indicates its applicability to "religious personal property for level I, II, II, IV, camps, and community correctional facilities inmates." (Fink Decl., Ex. 1.) It reads, in pertinent part: "inmates are prohibited from possessing, using, creating, or wearing any items with any design, symbol, or illustration identified as being associated with a security threat group." (Fink Decl., Ex. 1.) The second page identifies various religious items and contains their descriptions. (Fink Decl., Ex. 1.) The

7

Matrix contains a box pertaining to "Rune Tiles/ Shells – Runes/shells shall not to [sic] exceed ¾" x ¾". One set per inmate with instruction book. Set shall not exceed 25 pieces. Runes shall be wood, plastic, or natural material (i.e. bone, stone, etc.)." (Fink Decl., Ex. 1.) The Matrix also contains a box pertaining to "Stones – Set of 5, no larger than 1" in diameter, or set of 10, no larger than ½" in diameter." (Fink Decl., Ex. 1.) Although the document is both unauthenticated and hearsay, Moving Parties and Plaintiff have included identical copies of the Matrix as exhibits. The Court takes judicial notice of the document. *See* Fed. R. Evid. 201(b).

### B. Plaintiff's Proffer

Plaintiff has attached an "oath" to his Opposition, which "assert[s] that the facts contained herein are true, complete, correct, and not meant to be misleading to the best of [his] firsthand knowledge of the facts, and [he] will freely testify to the same." (Doc. 64, at 1.) Generally, a verified motion may be treated like an affidavit. See *Johnson v. Meltzer*, 134 F.3d 1393, 1399 (9th Cir. 1998). However, because the oath does not contain the requisite "under penalty of perjury" language, the Court cannot consider any of the factual assertions contained in Plaintiff's Opposition. *See* 28 U.S.C. § 1746(2); *Davenport v. Bd. Of Trustees of State Ctr. Cmty. Coll. Dist.*, 654 F.Supp.2d 1073, 1083 (E. D. Cal. 2009). Additionally, Plaintiff does not proffer a separate affidavit or declaration in support of his Opposition but includes a series of thirteen exhibits. (Doc. 64, at 26-74.)

Plaintiff's Exhibit 1 appears to be a photocopy of an email from "Greg," the Marketing & Sales Coordinator at AzureGreen, to an individual named "Millie." (Doc. 64, at 28.) The email contains the statement: "[m]ost stone runes run random sizes from the mines. Generally the larg[est] is an inch or less as the stones are too expensive to make large. Your order was returned missing pieces so it was discarded. I am sorry—let me know if we can answer any other questions. Sincerely, greg." (*Id.*) The content of this email is inadmissible hearsay, and therefore cannot be considered by the Court. *See* Fed. R. Evid. 801, 802, 805.

///

Plaintiff's Exhibit 2 contains four pages. (Doc. 64, 30-34.) The first appears to be a photocopy of a page from the Richard J. Donovan Correctional Facility Operations Manual Supplement, entitled "Chapter 10, Article 6 Religious Programs," which contains information relating to Native American religious allowances. (Doc. 64, at 30.) This document is irrelevant, and therefore inadmissible. *See* Fed. R. Evid. 401. The second page appears to be a photocopy of the Matrix (also submitted by Moving Defendants). (Doc. 64, at 31.) The Court has already taken judicial notice of the Matrix and will consider the content of the Matrix in its analysis. *See* Fed. R. Evid. 201(b). The third page appears to be a photocopy of a 2013 California Department of Corrections and Rehabilitation internal memorandum extending the "wear-out" period for the possession of religious artifacts by inmates until June 9, 2014. (Doc. 64, at 33.) This document is inadmissible because it is irrelevant: the memorandum discusses the applicability of the Matrix, but it only extends the applicability until June 9, 2014, whereas the events complained of here occurred in 2015. *See* Fed. R. Evid. 401. The fourth page appears to be a list of "Religious Programs Approved Vendors," on which the vendor "AzureGreen" appears. (Doc. 64, 34.) This document is related to the Matrix, is probative of whether the subject rune set was approved, and ought to be considered at the same time. Therefore, the Court will consider the content of the document. *See* Fed. R. Evid. 106.

Plaintiff's Exhibit 3 contains two pages. (Doc. 64, at 36.) The first appears to be a photocopy of a letter written by RJD Warden Daniel Paramo ("Warden Paramo") to a "Ms. Millie Hickman." The letter indicates that R. Brown spoke with Fink, who informed R. Brown that his "interpretation of the Religious Personal Property Matrix found that the Runes in question did not meet the criteria for entry due to the design on the Runes was in question relating to page one bullet point seven of the Religious Personal Property Matrix: Inmates are prohibited from possessing, using, creating, or wearing any items with any design, sign, symbol, or illustration identified as being associated with a security threat group. []Fink agreed if you would like to resend the Runes to Mr. Nible, he will have his direct supervisor and Mr. Brown, CRM make an assessment of the Runes." (*Id.*) Warden

Paramo, the author of the letter, is relaying to a third party, Ms. Hickman, the details of a conversation as reported to him by another third party, R. Brown, which contains admissions by a party to this action, Fink. (*Id.*) The content of the letter is inadmissible hearsay and therefore cannot be considered by the Court. *See* Fed. R. Evid. 801, 802, 805. The second page appears to be a photocopy of a letter from "Millie F. Hickman," which inquires as to "why the Rune Stones are being withheld from William L. Nible. The stones are of vital importance in his religious practices and rituals. In the past I have supplied other stones and herbs for his use, there has never been a problem with the use of these items." (Doc. 64, at 37.) The contents of this email relate to events within Plaintiff's personal knowledge, and therefore will be considered by the Court. *See* Fed. R. Evid. 602.

Plaintiff's Exhibit 4 appears to be a photocopy of a CDCR Religious Purchase Order, which indicates that Plaintiff purchased an amethyst Rune Set from AzureGreen on November 28, 2018 which was shipped to Plaintiff at the Sierra Conservation Center. (Doc. 64, at 39.) It appears that Plaintiff placed this order himself, because his signature appears on the document. Therefore, Plaintiff would have personal knowledge of the contents of the order form. As such, the contents of the form are admissible, and will be considered by the Court.

Plaintiff's Exhibit 5 appears to be a duplicate of the letter sent to Ms. Millie Hickman contained in Plaintiff's Exhibit 3. (Doc. 64, at 36, 41.) For the same reasons, Exhibit 5 is inadmissible and cannot be considered by the Court. *See* Fed. R. Evid. 801, 802, 805.

Plaintiff's Exhibit 6 appears to be a photocopy of a California Department of Corrections and Rehabilitation "Inmate/Parolee Request for Interview, Item or Service" form. (Doc. 64, at 43.) Section A of the document, entitled "Inmate/Parolee Request," contains a statement from Plaintiff dated September 14, 2015: "On July 13, 2015, I was ducated [sic] to R&R to pick-up [sic] a religious package. So c/o Fink refused to allow me these pre-approved religious item [sic]. I request that they be held until I filed a grieva[n]ce. This did not happen, the runes were returned to the vendor, however not all the runes were put in the package. The vendor will not except [sic] a partial set. So where do we go from

here?" (*Id.*) Section B of the document, entitled "Staff Response," contains a statement from a "C/O P. Aldaz" dated September 17, 2015: "Your order was returned to this vendor." (*Id.*) Section C of the document, entitled "Request for Supervisor Review," contains another statement from Plaintiff, dated September 27, 2015: "As demonstrated by the attached response from the vendor the returned package did not contain the complete set of runes, they now refuse to accept them and will not refund my purchase. These items are approved, why you sent them back I don't get." (*Id.*) Finally, section D of the document, entitled "Supervisor's Review," contains a statement by Diaz dated September 29, 2015: "The runes you ordered were not approved due to size restrictions / quantity restrictions. It is not our fault the vendor will not issue credit for a opened packages [sic]. R&R has to open the package when attempting to issue and verify item(s) are approved. You must order approved items in approved size/quantities [sic.]" (*Id.*) The statements made by Plaintiff and Diaz are admissible pursuant to Federal Rule of Evidence 801(d) and will be considered by the Court. The statements made by "C.O P. Aldaz," however, are inadmissible hearsay and therefore cannot be considered by the Court. *See* Fed. R. Evid. 801, 802.

Plaintiff's Exhibit 7 appears to be a photocopy of "Plaintiff's First Set of 'Request for Admissions' from Defendant T. Fink," propounded on or about May 30, 2018. (Doc. 64, at 45-49.) However, Plaintiff has failed to include Fink's responses (i.e., admissions or denials). (*Id.*) As such, the document does not support Plaintiff's factual position and is irrelevant, and thus will not be considered by the Court. *See* Fed. R. Civ. P. 56(c)(A); Fed. R. Evid. 401.

Plaintiff's Exhibit 8 contains two documents. (Doc. 64, at 51-53.) The first appears to be a photocopy of a "Government Claims Form" addressed to the California Victim Compensation and Government Claims Board dated September 9, 2015 and signed by Plaintiff (Doc. 64, at 52-53). In the document, Plaintiff states that Fink "did refuse to allow [him] religious items, [did] cause to be destroyed, sent [half] back to vendor while leaving the other half out, failed to follow laws." (*Id.*) He further states that he "received mail from

an approved vendor, prison guard Fink opened the package containing the runes and stated that because the[y] were stone I could [only] have 5. I said I want a 602." (*Id.*) Plaintiff ascribed the cause of damage to the state of California "because they failed train prison guard Fink and allowed him to conduct himself any old way he wants. They employee [sic] him." (*Id.*) Plaintiff's statements on this form are admissible pursuant to Federal Rule of Evidence 801(d) and will therefore be considered by the Court. The second document appears to be a photocopy of a response sent to Plaintiff by the California Victim Compensation and Government Claims Board, dated November 30, 2017 (Doc. 64, at 51). The document reads, in pertinent part: "The Victim Compensation and Government Claims Board (Board) rejected your claim at its meeting on November 19, 2015." (*Id.,* at 51.) Although the contents of the rejection letter are hearsay, the Court will consider them pursuant to Federal Rule of Evidence 807.

Plaintiff's Exhibit 9 appears to be a photocopy of Diaz's training record. (Doc. 64, at 55-63.) The training record indicates that Diaz has received training in "Inmate Parolee Appeals Form 602," "Inmate Mail Procedures," "Inmate Property," and "Security Threat Group." (*Id.*) Although the form of the evidence is inadmissible, the content (i.e., the facts that Diaz has participated in these trainings) is admissible and will therefore be considered by the Court. *See* Fed. R. Evid. 602.

Plaintiff's Exhibit 10 appears to be a photocopy of an email receipt sent from AzureGreen to Ms. Millie Hickman, dated June 24, 2015. (Doc. 64, at 65.) The email indicates that Ms. Hickman bought a "Bloodstone Rune set by Lo Scarabeo Lo Scarabeo" for $19.95 and paid $13.63 to have it shipped to 1070 Matson, Auburn, California 95603. (*Id.*) Although the document is hearsay, the Court will consider the contents of the document pursuant to Federal Rule of Evidence 807.

Plaintiff's Exhibit 11 appears to be a duplicate of Plaintiff's Exhibit 6. (Doc. 64, at 67.) For the same reasons, the statements of Plaintiff and Diaz are admissible and will be considered by the Court, whereas the statement by C/O P. Aldaz is inadmissible and will not be considered. *See* Fed. R. Evid. 801, 802.

Plaintiff's Exhibit 12 appears to be a photocopy of an email from AzureGreen sent to "Millie Hickman," which contains an invoice dated August 26, 2015. (Doc. 64, at 69.) The email also contains the statement "order returned, can't accept, package opened now missing pieces. Do you want? Shipping would be $6.00. If no response package will be disposed of on Sept 15th. Cindy." (*Id.*) The email has the "letterhead" of AzureGreen, and also contains Plaintiff's address at RJD. (*Id.*) Although the document is hearsay, the Court will consider the contents of the document pursuant to Federal Rule of Evidence 807.

Finally, Plaintiff's Exhibit 13 appears to be a photocopy of an "RJD Property Inventory Form," dated October 31, 2015 and signed by Plaintiff. (Doc. 64, at 71.) The form indicates in pertinent part that Plaintiff was in possession of the following "religious items" on that date: a necklace, runes, oils, and feathers. (*Id.*) Although the document itself is hearsay, the contents of the document (i.e., the fact that Plaintiff was in possession of the items on the list) will be considered by the Court pursuant to Federal Rule of Evidence 807.

## V. DISCUSSION

### A. Plaintiff's Procedural Due Process Cause of Action

Moving Defendants seek the entry of summary judgment on Plaintiff's procedural due process claim because an adequate post-deprivation remedy exists, making an unauthorized or negligent deprivation non-actionable. (Doc. 56, at 6-7.) Plaintiff responds that Moving Defendants' failure to comply with the inmate appeals process as set forth in Title 15 of the California Code of Regulations, sections 3137 *et seq.*, constitutes a violation of the Due Process Clause.[2] (Doc. 64, at 9-13.)

The Due Process Clause of the Fourteenth Amendment protects prisoners' interests in their personal property. *Hansen v. May,* 502 F.2d 728, 720 (9th Cir. 1974). However, the Due Process Clause does not protect against all deprivations of property by the state; it

---

[2] The Court notes that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure. *Ramirez v. Galaza,*

only protects against deprivations "without due process of law." Const. Amend. XIV; *see also Baker v. McCollan*, 443 U.S. 137, 145 (1979). Where the state must act quickly out of necessity, or where providing pre-deprivation process may be impractical, a meaningful post-deprivation process satisfies the Due Process Clause. *Parratt v. Taylor,* 451 U.S. 527, 538-539 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1998)). Where a deprivation of property is caused by conduct pursuant to established state procedure, post-deprivation remedies do not satisfy due process. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982). On the other hand, an intentional but unauthorized, or negligent deprivation of property by a state employee "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post[-] deprivation remedy." *Hudson v. Palmer,* 468 U.S. 517, 533 (1984).

California provides adequate post-deprivation remedies. *Barnett v. Centoni,* 31 F.3d 813, 816–17 (9th Cir. 1994) (per curiam) (finding that prisoner had failed to state a due process claim for deprivation of property because "California Law provides an adequate post-deprivation remedy for any property deprivations. *See* Cal. Gov't Code §§ 810–895.") *See also Teahan v. Wilhelm*, 481 F.Supp.2d 1115 (S.D. Cal. March 28, 2007). The fact that the remedy available does not afford equivalent relief to that provided by 42 U.S.C. § 1983 does not render the remedy inadequate. *See Parratt v. Taylor,* 451 U.S. at 544.

Here, the first inquiry is whether Plaintiff's rune set was confiscated pursuant to an established state procedure. On the day of the incident, Fink was tasked with receiving, inspecting, and processing incoming inmate packages. (Fink Decl., ¶ 3.) Fink opened and inspected the package in Plaintiff's presence and determined that the package contained religious stones. (Fink Decl., ¶ 4.) According to the Religious Personal Property Matrix, Plaintiff could only have religious stones in a "set of 5, no larger than 1" in diameter, or [in a] set of 10, no larger than ½" in diameter." (Fink Decl., Ex. 1; Doc. 64, at 32.) Fink

believed that the package violated the Religious Personal Property Matrix restrictions on religious stones and confiscated the contents of the package. (Fink Decl., ¶ 5.) Fink brought the items to Diaz, who "confirmed that the items were not permitted." (*Id.*) However, the religious items were not religious stones, they were actually part of a "Bloodstone Rune set" ordered from AzureGreen, a prison-approved vendor. (Doc. 64, at 65, 34.) It appears from the record before the Court that both Fink and Diaz misidentified the rune set as religious stones and therefore misapplied the Matrix. Based on this misapplication, Plaintiff's rune set was confiscated. Plaintiff concedes that it was the failure of Defendants to adhere to prison regulations that caused the issues complained of in this lawsuit. (Doc. 64, at 14.) Because the rune set was confiscated due to a misapplication of the property matrix, the deprivation was not caused by conduct pursuant to established state procedure. On the contrary, it was caused by conduct in violation of established state procedure; the conduct was therefore unauthorized.

The next inquiry is whether an adequate post-deprivation remedy is available. As the Court held in *Barnett v. Centoni,* 31 F.3d 813 (9th Cir. 1997), the state of California provides an adequate post-deprivation remedy for property deprivations, in the form of the California Government Claims Act. *See* Cal. Gov't. Code §§ 810, *et seq.* It appears that Plaintiff had knowledge of this remedy, and even availed himself thereof. (Doc. 64, at 52-53.) Unfortunately, Plaintiff's claim was rejected by the California Victim Compensation and Government Claims Board. (Doc. 64, at 51.) But procedural due process does not guarantee a successful outcome, only that a deprivation be accompanied by process. *See Donovan v. Ritchie,* 68 F.3d 14, 18 (1st Cir. 1995.) Plaintiff's own evidence shows that he was given that process. Thus, the state action which began with an unauthorized deprivation was completed when the state provided Plaintiff with an adequate post-deprivation remedy. *See Hudson v. Palmer,* 468 U.S. at 533.

Based on the record before the Court, Plaintiff cannot carry his burden at trial of proving that Moving Defendants violated his right to due process, because their actions were contrary to established state procedures, and an adequate state law remedy exists for

any alleged due process violations. Therefore, Moving Defendants are entitled to judgment as a matter of law. As such, it is respectfully recommended that the Court **GRANT** Moving Defendants' motion for summary judgment as to Plaintiff's procedural due process claim.

### B. Plaintiff's Equal Protection Cause of Action

Moving Defendants seek the entry of summary judgment on Plaintiff's equal protection claim because Plaintiff fails to allege he is a member of a protected class or that Moving Defendants acted because of Plaintiff's membership in that class, and because there is no evidence of discriminatory intent. (Doc. 56, at 6.)    Plaintiff argues that he is a member of a protected class, and that there is evidence to show that Fink acted with a discriminatory intent. (Doc. 64, at 7-8.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1982). An equal protection claim may be established by showing that the defendants intentionally discriminated against Plaintiff based on his membership in a protected class, *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate governmental interest, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Prisoners are also protected by the Equal Protection Clause from intentional discrimination on the basis of their religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Cruz*, 405 U.S. at 321-22), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Here, on the record before the Court, Plaintiff cannot carry his burden at trial of proving that Defendants confiscated his runes with discriminatory intent, or that similarly situated people of different religions are being treated differently. Fink opened and inspected the package in front of Plaintiff and identified the contents of the package as religious stones. (Fink Decl., ¶ 4.) Fink believed that Plaintiff was not permitted to possess

the contents of the package because their size and material violated the Matrix regulation that restricted the size of religious stones. (*Id.*) Diaz agreed with Fink's assessment. (Fink Decl., ¶ 5.) In an effort to show a genuine dispute of material fact, Plaintiff has produced a letter addressed to Ms. Millie Hickman from Warden Paramo. (Doc. 64, at 36.) This letter indicates Fink informed R. Brown that Fink determined the Runes were in violation of the Matrix because they violated page one, bullet point seven: "[i]nmates are prohibited from possessing from possessing, using, creating, or wearing any items with any design, sign, symbol, or illustration identified as being associated with a security threat group." (*Id.*) The Court cannot consider the contents of the letter, as they constitute inadmissible hearsay. But, even if the Court could consider the contents of the letter, they are not enough to show a genuine issue of material fact as to whether Fink and Diaz discriminated against Plaintiff on the basis of his religion. At best, Defendants may have offered one explanation to Plaintiff, and another to Ms. Hickman. Neither of the explanations was connected to Plaintiff's religion. Based on the record before the Court, Plaintiff cannot carry his burden of proving that Moving Defendants discriminated against him on the basis of his religion.

Plaintiff has also argued that people are able to practice other religions without problems. (Doc. 64, at 8.) However, Plaintiff has produced no evidence to support that claim. Additionally, the language of the Matrix indicates that it applies equally to all inmates, male and female, and has similar restrictions on religious artifacts used by a multitude of different faiths. (Doc. 64, at 32.) There is no evidence to support Plaintiff's claim that people of other faiths are being treated differently. Therefore, Plaintiff cannot carry his burden of proof at trial.

Plaintiff has not produced evidence from which a reasonable jury could find that Moving Defendants intentionally discriminated against Plaintiff based on his religion, or that Moving Defendants treated similarly situated individuals differently. As such, it is respectfully recommended that the Court **GRANT** summary judgment for Moving Defendants as to Plaintiff's equal protection cause of action.

/ / /

### C. Plaintiff's First Amendment Free Exercise Cause of Action

Moving Defendants seek the entry of summary judgment on Plaintiff's free exercise cause of action because the confiscation of Plaintiff's rune set does not constitute a substantial burden on Plaintiff's constitutional rights, and Plaintiff was allowed to have other rune sets before and after the incident at issue here. (Doc. 56, at 8-9.) Plaintiff argues that the confiscation of his rune set constituted a substantial burden on Plaintiff's right to practice his religion because the use of the runes is an essential element of his faith. (Doc. 64, 14-16.)

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma,* 723 Fl.3d 984, 1011 (9th Cir. 2013).

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted). To implicate the Free Exercise Clause, the prisoner's belief must be both sincerely held and rooted in religious belief. *See Shakur v. Schriro,* 514 F.3d 878, 884-885. "To ensure that courts afford appropriate deference to prison officials," the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be "judged" under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *Jones v. Williams*, 791 F.3d at 1032 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). The challenged conduct is valid if it is reasonably related to legitimate penological interests. *Id.* (internal citations omitted).

Here, "Plaintiff was permitted to possess rune tiles or religious stones that complied with the matrix." (Fink Decl., ¶ 6.) Defendant's declaration is supported by Plaintiff's submitted evidence: according to the "RJD Inmate Property Inventory," Plaintiff was in possession of runes on October 31, 2015, three months after the incident. (Doc. 64, at 71.) Also, Ms. Millie Hickman purchased other "rune stones" for Plaintiff without any problems. (Doc. 64, at 37.) Finally, Plaintiff ordered another set of runes, this time made of amethyst, on November 11, 2016. (Doc. 64, at 39.) Plaintiff has submitted no evidence showing that the practice of his religion was substantially burdened: there is nothing that shows the deprivation coerced him into acting contrary to him religious beliefs or exert substantial pressure on him to modify his behavior and to violate his beliefs. Given the fact that Plaintiff was in possession of a rune set at or near the time of the deprivation (Doc. 64, at 71), and that he had rune sets before and after the incident (Doc. 64 at 37, 39), the deprivation at issue here is, at most, an inconvenience. Moving Defendants have submitted no evidence addressing whether the confiscation of the rune set was reasonably related to legitimate penological interests. But under these circumstances, they are not required to: they have showed the Court that Plaintiff cannot carry his trial burden of proving that the confiscation of Plaintiff's rune set constituted a substantial burden on Plaintiff's religious expression.

Based on the record before the Court, Plaintiff cannot carry his burden at trial of proving that the confiscation of the rune set at issue here substantially burdened the exercise of his religion. Therefore, it is respectfully recommended that the Court **GRANT** summary judgment in favor of Moving Defendants as to Plaintiff's free exercise claim.

### D. Plaintiff's State Law Claim

Plaintiff has asserted claims pursuant to California Tort law but fails to identify a concrete theory. (Doc. 46, at 8, 11.) Liberally construing Plaintiff's pleading, it appears that he has asserted a cause of action for a violation of California Code of Regulations, Title 15, based on Moving Defendant's alleged failure to follow prison mail regulations. (*Id.*, at 9, 11.)

There is no independent cause of action under § 1983 for a violation of Title 15 regulations. *See, e.g., Chappell v. Newbarth*, 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir.1997); see also *Davis v. Kissinger*, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb.3, 2009) ("there is not a single reported state or federal case permitting an independent cause of action pursuant to these regulations [Cal.Code Regs. tit. 15 § 3268]"). Similarly, there is no liability under § 1983 for violating prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009). Violations of state law, local law, or prison regulations cannot be remedied under § 1983 unless they also violate a constitutional or federal statutory right. *See Davis v. Scherer*, 468 U.S. 183, 192 (1984). It is the deprivation of a federal law that is an essential element of a § 1983 claim. *See Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) ("Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal 'Constitution and laws.'" (quoting 42 U.S.C. § 1983)). An alleged failure to comply with a provision of state law, policy, or practice by itself does not amount to a violation of a federal right. *Id.* at 370-71; *see also Barber v. City of Salem*, 935 F.2d 232, 240 (6th Cir. 1992) (failure to comply with a state regulation is not itself a constitutional violation); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) (accord).

As the Court has found above, Plaintiff's due process rights were not violated because the confiscation of the rune set was contrary to established state procedures and an adequate post-deprivation remedy exists, of which the Plaintiff availed himself. Thus, the violation of the prison regulation does not "also violate a constitutional or federal statutory right." *Davis v. Scherer,* 468 U.S. at 192. Accordingly, to the extent that Plaintiff alleges a violation of Title 15 of the California Code of Regulations, Plaintiff cannot prove an essential element of his claim, i.e., that a federal constitutional right has been violated. / / /

3:16-cv-02849-BAS-RBM

Therefore, it is respectfully recommended that the Court **GRANT** summary judgment for Moving Defendants as to Plaintiff's California Code of Regulations Title 15 claim.

### E. Plaintiff's Eighth Amendment and RLUIPA Claims

Moving Defendants seek the entry of summary judgment on Plaintiff's Eighth Amendment claim because there is no evidence that the rejection of a single piece of mail containing religious stones or runes subjected Plaintiff to a substantial risk of serious harm, or that they knew of such harm and consciously disregarded it. (Doc. 56, at 5.) Moving Defendants also argue they are entitled to summary judgment on Plaintiff's RLUIPA claim because Plaintiff may not maintain a RLUIPA claim against a government official in his individual capacity, and because monetary claims are barred against official capacity defendants under the Eleventh Amendment. (*Id.,* at 5-6.) Plaintiff "concedes to granting of summary judgment" on both the Eighth Amendment and RLUIPA claims. (Doc. 64, at 6, 7.)

Plaintiff submits no evidence in opposition to the motion with respect to the Eighth Amendment or RLUIPA claims. Instead, Plaintiff expressly consents to the granting of summary judgment. In the absence of an opposition, the Court finds that Moving Defendants have carried their burden of identifying a lack of evidence supporting an essential element of plaintiff's claims. Plaintiff has failed to offer evidence that creates a triable issue of fact as to any element of both the Eighth Amendment and RLUIPA claims. Accordingly, it is respectfully recommended that the Court **GRANT** summary judgment as to the Eighth Amendment and RLUIPA claims.

### F. Moving Defendants' Qualified Immunity

Moving Defendants claim they are entitled to qualified immunity because their actions were not in violation of a clearly established constitutional right and because it was unclear that their conduct would be unlawful. (Doc. 56, at 9-10.) Plaintiff argues that the rights Defendants are claimed to have violated are clearly established, and that it was clear that Defendants' conduct was unlawful because Defendants are held to have constructive

knowledge of established laws. (Doc. 64, at 17-19.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal citations omitted). The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Second, if the plaintiff has satisfied the first step, the court must determine whether the right was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232; *see also Saucier*, 533 U.S. at 201.

Even if the violated right was clearly established at the time of the violation, it may be "difficult for [the defendant] to determine how the relevant legal doctrine . . . will apply to the factual situation the [defendant] confronts ... . [Therefore, i]f the [defendant's] mistake as to what the law requires is reasonable ... the [defendant] is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. The reasonableness inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Whether the defendant violated a constitutional right and whether the right was clearly established at the time of the violation are pure legal questions for the court. *See Serrano v. Francis,* 345 F.3d 1071, 1080 (9th Cir. 2003). However, "[i]f a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Id.,* at 1077. Because analysis of the First *Saucier* prong is dispositive, the Court will dispense with analysis of the second *Saucier* prong. *See Saucier*, 533 U.S. at 201; *see also Pearson*, 55 U.S. at 236.

Plaintiff has consented to the grant of summary judgment as to his Eighth Amendment and RLUIPA claims. (Doc. 64, at 6, 7.) The causes of action remaining before to court, and to which the doctrine of qualified immunity could therefore apply, involve the right to procedural due process, equal protection, and the free exercise of religion. The Court has already found that Moving Defendants have not violated these constitutional rights. Plaintiff's right to procedural due process was not violated because Moving Defendants' actions were contrary to established state procedure. Plaintiff's right to the equal protection of the laws was not violated because there is no evidence of discriminatory intent, nor that similarly situated individuals were treated differently. Finally, Plaintiff's right to the free exercise of religion was not violated because the confiscation of the rune set did not constitute a substantial burden on his right to practice his religion. Because the facts taken in the light most favorable to Plaintiff do not show that Moving Defendants violated Plaintiff's constitutional rights, Moving Defendants are entitled to qualified immunity.

## VI. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Cynthia A. Bashant under 28 U.S.C. § 636(b)(1)(B) and Rule 72.1(c)(1)(d) of the Local Civil Rules of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order **GRANTING** summary judgment against Plaintiff, and for Fink and Diaz, as to all of Plaintiff's claims.

**IT IS ORDERED** that no later than **30 days after submission of the order**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **30 days after filing of objections**. The parties are advised that failure to file objections within the specified time may waive the right to raise

/ / /

those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 445, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: April 5, 2019

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE